# UNITED STATES DISTRICT COURT
for the
District of New Mexico

**FILED**
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

A Samsung cellular telephone, International Mobile Equipment Identity (IMEI) number 354967581536713, currently located at the FBI, in Albuquerque, NM

Case No. 21-MR-853

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, attached and incorporated by reference.

located in the _____ District of ___New Mexico___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached and incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2423; 18 U.S.C. § 2251; 18 U.S.C. § 2422; 18 U.S.C. § 2252A(a)(2). | Transportation of a minor with intent to engage in criminal sexual activity; Production of child pornography; Coercion and enticement; Distribution/Receipt of child pornography |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Justin Wingerd, Special Federal Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone and electronic signature
*(specify reliable electronic means).*

Date: June 23, 2021

*Judge's signature*

City and state: Albuquerque, New Mexico

Hon. Jerry H. Ritter
*Printed name and title*

U.S. Magistrate Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>A Samsung cellular telephone, International Mobile Equipment Identity (IMEI) number 354967581536713, currently located at the Federal Bureau of Investigation, 4200 Luecking Park Avenue NE, Albuquerque, NM 87107, and more fully described in Attachment A. | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Task Force Officer Justin Wingerd with the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) and have been since May 2021. I am currently a full-time, sworn law enforcement officer with the Albuquerque Police Department (APD), assigned to APD's Sex Crimes Unit, Criminal Investigations Bureau. I have been with APD since 2014. My duties include investigations on all felony crimes to include but not limited to: Aggravated Battery, Aggravated Assault, Kidnappings, Criminal Sexual Penetration, and all related Domestic Violence investigations. I

currently have several years' experience in the writing and execution of search and arrest warrants. I am recognized as a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure (FRCP) 41(a)(2)(C). I am currently assigned to the FBI's Child Exploitation and Human Trafficking Task Force where I investigate a myriad of federal violations including, violent crimes against children, human trafficking, child pornography, online enticement, and sexual exploitation of children. I have received on the job training from other experienced agents in the investigation of federal offenses, to include child pornography and child exploitation offenses.

3. I have received on the job training from other experienced agents and law enforcement officers. My investigative training and experience includes, but is not limited to, conducting surveillance, interviewing subjects, writing affidavits for search and arrest warrants, collecting evidence and learning legal matters which includes the topics of fourth amendment searches. I have previously participated in child exploitation investigations and search warrants.

4. The following information contained in this affidavit is based on my training and experience, my personal participation in this investigation, and information provided to me by other law enforcement officials. Unless otherwise indicated, where I have referred to written or oral statements, I have summarized them in substance and in part, rather than verbatim. Not all of the facts of the investigation known to me are contained herein, only those necessary to establish probable cause to search the below-listed items pertaining to the captioned investigation. As will be shown below, there is probable cause to believe that evidence of violations of 18 U.S.C. § 2423, transportation with intent to engage in criminal sexual activity; 18 U.S.C. § 2251, production of child pornography; 18 U.S.C. § 2422, coercion and enticement; 18 U.S.C. §

2252(a)(2), receipt of child pornography; will be found on the device listed below and described in Attachment A.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is a Samsung cellular telephone, International Mobile Equipment Identity (MEI) Number 354967581536713 (hereinafter "the Device"). The Device is currently secured at the FBI, 4200 Luecking Park Avenue NE, Albuquerque, NM 87107.

6. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## LEGAL DEFINITIONS

7. The following terms are relevant to this affidavit in support of this application for a search warrant:

   a. Child Pornography: The term "child pornography" is defined at 18 U.S.C. § 2256(8). It consists of visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), as well as any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct. See 18 U.S.C. §§2252 and 2256(2), (8).

   b. Computer: The term "computer" refers to "an electronic, magnetic, optical, electrochemical, or other high-speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, mobile phones and devices, and tablets. See 18 U.S.C. § 1030(e)(1).

   c. Electronic mail ("e-mail" or "email"): "E-mail" refers to a method of exchanging digital messages from an author to one or more recipients. Users may attach digital media to their e-mails. Modern e-mail operates across the Internet or other

3

computer networks. E-mail systems are based on a store-and-forward model. Email servers accept, forward, deliver and store messages. E-mail accounts may be accessed by computers, to include smartphones and tablets.

d. Minor: The term "minor" means any person under the age of eighteen years. See 18 U.S.C. § 2256(1).

e. Sexually Explicit Conduct: The term "sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. See 18 U.S.C. § 2256(2).

f. Visual Depictions: "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

## RELEVANT STATUTES

8. This investigation concerns alleged violations of certain activities relating to the sexual exploitation of minors: 18 U.S.C. §§ 2423, 2251, 2422, and 2252A(a)(2):

   a. Title 18 U.S.C. § 2423 makes it a federal crime for any person to knowingly transport an individual under 18 years of age in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense.

   b. Title 18 U.S.C. §§ 2251(a) and (e) make it a federal crime for "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce

or mailed."

c. Title 18 U.S.C. § 2422 makes it a federal crime for any person to use the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so.

d. Title 18 U.S.C. §§ 2252A(a)(2) and (b)(1) provide, in relevant part, that any person who knowingly receives or distributes any child pornography or any material that contains child pornography that has been mailed, or using any means or facility of interstate or foreign commerce transported in or affecting interstate or foreign commerce by any means, including by computer, or any person who attempts to do so, shall be guilty of a federal offense.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

9. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

10. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

    f.  I know that when an individual uses an electronic device to produce child pornography, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

    11.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41 (e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

    12.  *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the

physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## PROBABLE CAUSE

13. On June 17, 2021, at approximately 1830 hours, I was notified of a sexual assault investigation concerning a 16-year-old victim, Jane Doe.[1] Jane Doe is currently enrolled as a high school student within the City of Albuquerque, although she is originally from Honduras and has only been in Albuquerque for approximately two months' time, since April of 2021. On the morning of June 17, 2021, Jane Doe was encouraged by a friend to disclose sexual assault perpetrated by an approximately 43-year-old male adult known to Jane Doe as Alberto Villanueva Carpio (VILLANUEVA). Jane Doe reported this abuse to a teacher at her school, and the school contacted the State of New Mexico Children, Youth, and Family's Department (CYFD).

14. A CYFD investigator met with Jane Doe and obtained copies of Jane Doe school registration paperwork as well as a "State of Texas Power of Attorney Over Child" form, in which VILLANUEVA was purportedly assigned guardianship over Jane Doe. Jane Doe then agreed to participate in a Sexual Assault Nurse Examiner (SANE) examination—from which a Sexual Assault Evidence Kit (SAEK) was obtained.

15. During the course of the SANE examination, Jane Doe reported that she has known for VILLANUEVA for approximately four years' time due to VILLANUEVA being a friend to Jane Doe's father. While they resided in Honduras and when she was 12 years old, VILLANUEVA frequently and over a span of four years' time, habitually engaged in forced sexual intercourse with Jane Doe.

---

[1] Jane Doe's identity is known to law enforcement, but not included here to protect the minor's identify as well as the ongoing criminal investigation.

7

16. In or around the month of April 2021, Jane Doe and her father were transported from Honduras to the border of the United States where they made contact with VILLANUEVA in the area of Piedras Negras in Mexico. From Piedras Negras, VILLANUEVA transported Jane Doe and her father across the border and—once in the United States—her father left Jane Doe in order to travel to the State of Tennessee and Jane Doe was driven by VILLANUEVA to Albuquerque.

17. Once in Albuquerque, Jane Doe was taken to VILLANUEVA's apartment—identified by Jane Doe as being at the Towers Apartments, Apartment #111, located at 5404 Montgomery Blvd. NE, Albuquerque, NM 87109—where VILLANUEVA consistently engaged in unwanted sexual intercourse with Jane Doe.

18. She advised that the most recent sexual assault had occurred the previous evening, on or around the evening of June 16, 2021. In describing the apartment, Jane Doe stated that she and VILLANUEVA shared a bed within the apartment but that if the bed were not present in the apartment it was due to VILLANUEVA having cleaned the residence in order to flee Albuquerque.

19. Jane Doe described that she did not know anyone in Albuquerque and that during the two months' time that she was forced to live with VILLANUEVA that he did not permit anyone to come to the apartment, he threatened to harm her and her parents if she did not obey him, and she did not feel safe to leave the apartment or reveal her living situation to anyone until she felt encouraged by her friend to do so.

20. Jane Doe disclosed that she was initially under the impression that, upon being driven into the United States, she would be then transported to Houston, Texas to where she be reunited with her aunt.

21. During the course of the SANE examination, Jane Doe's personal cell phone repeatedly rang as VILLANUEVA called her phone. Jane Doe did not answer the phone, which prompted VILLANUEVA to send numerous messages under the profile name "Tio" to Jane Doe via the WhatsApp messenger program. After she did not respond, Jane Doe's cell phone began to ring as her father then began to call Jane Doe's cell phone. Jane Doe answered one of her father's calls and her father told her that she was lying about VILLANUEVA, that VILLANUEVA was going to get in trouble without reason, that she belonged to VILLANUEVA, and that he [her father] along with VILLANUEVA were going to come for her. The call from her father had been overheard by the SANE nurse, who later advised me of what she had heard on that phone call.

22. The CYFD investigator took possession of Jane Doe's cell phone and the phone was summarily taken into police custody before being taken into the possession of the FBI. The Device remains in FBI custody within a locked and secured office at this time.

23. Around the time that Jane Doe was transported for her SANE examination, APD field officers attempted to make contact with VILLANUEVA at his apartment, Apartment #111, without success. The officers then contacted the management office for the apartment complex and spoke with maintenance personnel who advised that they had earlier entered the apartment within their own professional capacity, without having been requested to do so by law enforcement, and they observed that the room appeared bare as if the tenant(s) were in preparation to vacate the premises. The maintenance personnel indicated that they did observe what appeared to be "little girl clothing."

24. Jane Doe identified VILLANUEVA as being a human smuggler, who frequently transports individuals from Mexico to the United States in exchange for money. She stated that she understood that her father owed VILLANUEVA approximately $30,000 in exchange for

9

having transported her father and herself into the United States. Jane Doe stated that she believed that she, herself, was to serve VILLANUEVA as the form of payment for his having transported her father and herself into the United States.

25.   Jane Doe further advised that VILLANUEVA had taken her passport, copies of her birth certificate, and her additional identification paperwork. She also stated that she only maintains contact with friends and family via her cell phone through the utilization of Facebook and WhatsApp messaging services, which she believes VILLANUEVA uses in order to track her location.

26.   A state search warrant was executed on VILLANUEVA's apartment on June 19, 2021 and no one was located inside. Numerous items were seized from the apartment, to include: white-colored bedding from a small mattress located on the floor of a rear bedroom, several pairs of underwear which appeared to belong to a female teenager, one black-colored cell phone located in a box within the bedroom containing the mattress, a small green-colored backpack that appeared to belong to Jane Doe, as well as a second set of gray-colored bedding located in the hallway closet.

27.   Jane Doe participated in an emergency forensic interview at a local Albuquerque safe house in which she disclosed a narrative consistent with that as originally provided to law enforcement and the SANE nurse during her SANE examination, with several further points of clarification. More specifically, Jane Doe stated that she had used her own cell phone to send photographs and/or videos of her naked body to VILLANUEVA, per his request via cell phone.

28.   In summary, I have probable cause to believe the Device will contain evidence of child exploitation offenses, to include the transportation of Jane Doe across international borders for the purpose of VILLANUEVA engaging in criminal sexual intercourse with Jane Doe; the

production of child pornography by Jane Doe at VILLANUEVA's request; coercion and enticement of Jane Doe by VILLANUEVA through a facility of interstate commerce; and receipt of child pornography by VILLANUEVA.

## **TECHNICAL TERMS**

29. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Based on my training and experience, the technical terms identified in this paragraph convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital

11

cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet,

12

connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## BACKGROUND ON CHILD EXPLOITATION OFFENSES AND OFFENDER CHARACTERISTICS

30. I have had both training and experience in the investigation of computer-related crimes and child exploitation offenses. Based on my training, experience, and knowledge, I know the following:

   a. Computers and computer technology have revolutionized how sexually explicit material depicting minors is obtained, solicited, produced, distributed, and utilized. In general, computers, including cellular phones, serve four functions in connection with child exploitation offenses: communication, production, distribution/receipt, and storage.

   b. Persons engaged in child exploitation offenses most often use the Internet to do so. The Internet offers several different venues for obtaining, viewing, and trading sexually explicit images in a relatively secure and anonymous fashion. Individuals who use the Internet can communicate electronically by using e-mail and other chat or messaging services. Such messages can contain text, data, and images.

   c. Once persons engaged in child exploitation offenses obtain child pornography material from the Internet, as described above, they often maintain or store this material because the material is valuable to them. Offenders maintain or store child pornography material in a variety of ways. For instance, such persons may store child pornography material on computers, including smartphones, mobile phones and devices, storage devices (including USB drives) and tablets.

   d. Persons engaged in child exploitation offenses often use online resources to meet and communicate other like-minded individuals. The Internet afford such persons several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

   e. Persons engaged in child exploitation offenses often use online resources, including social media applications, and communicate with minors. Such individuals may receive sexual gratification, stimulation, and satisfaction from virtual contact with children. Such contact often includes conversations that are sexual in nature, including requesting sexually explicit conduct from the child.

## REQUEST FOR SEALING

31. It is further respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because premature disclosure of the contents of this Affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

## CONCLUSION

32. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

33. Assistant United States Attorney Sarah Mease reviewed and approved this search warrant application.

Respectfully submitted,

*/s/ Justin Wingerd*
Justin Wingerd
Special Federal Officer
Federal Bureau of Investigation

Subscribed electronically and sworn telephonically to me this __23__ day of __June__, 2021:

HONORABLE JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

The property to be searched is a Samsung cellular telephone, International Mobile Equipment Identity (IMEI) Number 354967581536713 ("the Device").

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

# **ATTACHMENT B**

1. All records on the Device described in Attachment A that relate to violations of 18 U.S.C. §§ 2423, 2251, 2422, and 2252A(a)(2) including:

    a. All visual depictions (including images, videos, negatives, still photos, video tapes, artists drawings, slides and any type of computer formatted file) which depict a minor engaged in sexual conduct, or the lewd exhibition of genitalia, or posed or candid in a sexual manner, including clothed or partially clothed.

    b. All non-sexual photographs of minors who may be the subject of child exploitation offense or an attempted offense as described in the relevant criminal statutes listed above, and any information, including names, addresses, nicknames, schools, or after-school groups, that may lead to the age or identity of any minor depicted in any visual media seized.

    c. Any correspondence with minor children that may be used to identify the child, or demonstrate an effort to groom, meet, or sexually exploit the child.

    d. Other correspondence pertaining to the possession, receipt, distribution, production, and/or reproduction of visual depictions of a person under the age of 18 years engaging in or simulating sexual conduct.

    e. All materials which may be sexually arousing to individuals who are interested in minors, but which are not in and of themselves obscene or which do not necessarily depict minors involved in sexually explicit conduct. Such materials includes written materials dealing with child development, sex education, child pornography, sexual abuse of children, incest, child prostitution, missing children, investigative techniques of child exploitation, sexual disorders, pedophilia, nudist publications, diaries, journals and fantasy writings.

    f. All documentation, describing discussions by any individual or entity concerning: the identity of persons that are sexually attracted to children, members of child sex advocacy groups, child victims and other persons involved in the sexual exploitation of children.

    g. All documentation and records, showing discussions by any individual or entity concerning: the selling, licensing, manufacturing, marketing, transferring, providing, furnishing, sampling, or examining of documents, records, images, magnetic media or other items incorporating, or purportedly compatible with the producing, sending, receiving, possessing and viewing of child pornographic materials.

h. All documentation related to computer passwords, encryption keys, and other access devices.

i. All documents, web history, and communications demonstrating any communication or correspondence with any person or groups of persons supplying, distributing, or trading in child sexual abuse materials, or discussing a sexual interest in minors.

j. Bookmarks, internet history, temporary internet files, .lnk files, cache files, and other items showing how the computer was accessed, who accessed the computer, and/or how the computer was utilized.

k. All evidence related to off-site storage of electronic data, such as cloud-based servers, including usernames, passwords, account information and access logs.

l. Records of Internet Protocol addresses used.

m. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

n. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.